UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORWOOD WITHERSPOON,

        Petitioner,

                        CASE NO. 2:16-CV-13736
v.                       HONORABLE GEORGE CARAM STEEH
                        UNITED STATES DISTRICT JUDGE
NOAH NAGY,[1]

        Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

      Norwood Witherspoon, ("petitioner"), confined at the Lakeland Correctional Facility in Coldwater, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree felony murder, MICH. COMP. LAWS § 750.316(1)(b); and armed robbery, MICH. COMP. LAWS § 750.529. He was sentenced to life imprisonment for the first-degree murder conviction, and to 60 to 80 years' imprisonment for the armed robbery conviction.

_____

      [1] The Court amends the caption to reflect the current warden of petitioner's incarceration.

For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the January 18, 2012, shooting death of Hussan Hussein, an attendant at a gas station in the city of Highland Park, Michigan. The gas station attendant is separated from the public behind a partitioned area. The door that allows customers entry into the store is equipped with a locking mechanism that allows the attendant to "buzz" a customer into the store from behind the partition. It was the prosecutor's theory of the case that defendant entered the gas station, went to the beverage coolers, selected a juice, and deliberately broke the glass bottle on the floor. He then selected another juice, purchased it, and left the store. When defendant left the store, codefendant Brian Matthew Evans placed a stick in the door to prevent it from locking. Hussein left the partitioned area to clean up the broken bottle when Evans entered with his face partially obscured. Evans shot the victim three times, twice in the legs and once in the chest. After the shooting, Evans gave his cellular telephone to his then-wife, Tanganyika Felton, who later gave it to the police. An analysis of defendant's and Evans's cellular telephones disclosed that the telephones placed calls to each other in the vicinity of the gas station at the time of the shooting. Additionally, both men were identified on the station's video surveillance recording by their respective parole officers. Defendant admitted to his parole officer that he had visited the

gas station, but denied any involvement in the crimes.

Defendant was convicted following a jury trial and the trial court sentenced defendant as noted above. Defendant now appeals as of right.

*People v. Witherspoon*, No. 317382, 2014 WL 7214102, at *1 (Mich. Ct. App. Dec. 18, 2014).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.,* 498 Mich.

948, 872 N.W.2d 439 (2015).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.      The *Brady* violation Claim.

II.     Speedy Trial Claim.

III.    Ineffective Assistance of Trial Counsel Claim.

IV.     Prosecutorial Misconduct Claim.

V.      Sufficiency of the Evidence Claim.

VI.     Admission into evidence of several photographs.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on

the merits in State court proceedings unless the adjudication of the claim–

> (1)　resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)　resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III. Discussion

### A. Claims ## 1 and 4. The procedurally defaulted claims.

In his first claim, petitioner alleges that the prosecutor committed a *Brady*[2] violation by failing to provide the investigative subpoena testimony of Tanganyika Felton before the preliminary examination, thereby limiting the opportunity for impeachment of her preliminary examination testimony. In his fourth claim, petitioner alleges that the prosecutor committed misconduct.

Respondent contends that petitioner's first and fourth claims are

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

procedurally defaulted because petitioner did not preserve these claims in the trial court and the Michigan Court of Appeals relied on this failure to reject petitioner's claims. *See People v. Witherspoon,* 2014 WL 7214102, at *1, 7.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

In addition, "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

The Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved his *Brady* or prosecutorial misconduct claims. The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's claims does not constitute a waiver of the state procedural default. *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000). This Court finds the Michigan Court of Appeals' reviewed petitioner's claims for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001). Petitioner's first and fourth claims are procedurally defaulted.

Petitioner has failed to allege any reasons to excuse his procedural default. Although ineffective assistance of counsel may be cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Petitioner raised an ineffective assistance of counsel claim in the state courts but did not raise a claim that counsel was ineffective for failing to object to the failure of the prosecutor to supply petitioner with the investigative subpoena testimony of Tanganyika Felton before the preliminary examination or to

the prosecutor committing misconduct by introducing irrelevant and prejudicial information. Because petitioner never raised in the Michigan courts a specific claim about trial counsel's failure to object to the alleged *Brady* violation or to the alleged prosecutorial misconduct, any alleged ineffectiveness of counsel cannot constitute cause to excuse petitioner's default with respect to his first or fourth claims. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his first and fourth claims. *Smith*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his *Brady* or prosecutorial misconduct claims as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim (Claim # 5) is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur if the Court declined to review

petitioner's procedurally defaulted claims on the merits. *See Harris v. Stegall*, 157 F. Supp. 2d 743, 751 (E.D. Mich. 2001).

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F.3d 883, 891 (6th Cir. 2007). For the reasons stated by the Michigan Court of Appeals in rejecting petitioner's first and fourth claims and the Assistant Attorney General in her answer, petitioner has failed to show that his first and fourth claims have any merit. The reasons justifying the denial of petitioner's first and fourth claims were "ably articulated by the" Michigan Court of Appeals, therefore, "the issuance of a full written opinion" by this Court regarding the merits of these claims "would be duplicative and serve no useful, jurisprudential purpose." *See Bason v. Yukins,* 328 F. App'x 323, 324 (6th Cir. 2009). Petitioner is not entitled to relief on his first and fourth claims.

**B. Claim # 2. The speedy trial claim.**

Petitioner next alleges that his Sixth Amendment right to a speedy trial was violated because of a delay of approximately 16 months between

the time of his arrest and his trial.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. Amend. VI. To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No single factor is determinative, rather a court must weigh them and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. 407 U.S. at 533. The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon,* 556 U.S. 81, 89 (2009)(quoting *Barker*, 407 U.S., at 522)(quoting *Beavers v. Haubert*, 198 U.S. 77, 87 (1905)).

The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530. Therefore, to trigger a speedy trial analysis, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing an ordinary from a presumptively prejudicial delay.

*Doggett v. United States,* 505 U.S. 647, 651-52 (1992). Courts have generally found postaccusation delays that approach one year to be "presumptively prejudicial". *Id.* 505 U.S. at 652, n. 1; *United States v. Brown,* 90 F. Supp. 2d 841, 846 (E.D. Mich. 2000). The delay between the time of the arrest to when petitioner was brought to trial amounted to approximately 16 months. This delay between petitioner's arrest and trial is presumptively prejudicial; therefore, the Court needs to engage in an examination of the remaining *Barker* factors. *See U.S. v. Bass,* 460 F.3d 830, 836 (6th Cir. 2006).

With respect to the second *Barker* factor, the reasons for the delay, the Court must determine "whether the government or the criminal defendant is more to blame for [the] delay." *Maples v. Stegall,* 427 F.3d 1020, 1026 (6th Cir. 2005)(citing *Doggett*, 505 U.S. at 651). When evaluating a speedy trial claim, delays caused by the defense are to be weighed against the defendant. *Vermont v. Brillon,* 556 U.S. at 90; *see also U.S. v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007).

The Michigan Court of Appeals recited the reasons for the delays as follows:

> The reasons for the delay included docketing issues because of the retirement of the original trial judge and the transfer of the

case to another judge, the attorneys' unavailability because of other trials, the unavailability of a prosecution witness, and Evans's dismissal of trial counsel on multiple occasions. These docketing and scheduling delays, although attributed to the prosecutor, are given only a neutral tint. There is no indication that the prosecutor deliberately delayed the trial to obtain any type of advantage or to cause prejudice to defendant. In terms of defendant's assertion of his right to a speedy trial, defendant agreed to the initial adjournment on June 27, 2012, and on September 14, 2012, though defendant objected to further adjournment, he acknowledged that there was "good cause to adjourn." Defendant again objected to an adjournment on January 15, 2013, but did not specifically assert a speedy trial violation until April 22, 2013. Defendant's trial began little more than a month after defendant formally raised his claim of a right to a speedy trial.

Regarding prejudice, on appeal, defendant asserts that he suffered prejudice because he was incarcerated in prison, instead of the local jail, making it difficult to communicate with trial counsel. However, defendant was incarcerated before trial because of a parole violation, meaning any difficulty attributable to the distance caused by his imprisonment was not caused by the delay. Moreover, incarceration alone, without prejudice to a defendant's defense, is not sufficient to establish prejudice. The only prejudice defendant alleges to his defense is that the delay prevented him from presenting an alibi defense with his father as a key witness. This claim of prejudice lacks merit, however, given that defendant never filed a notice of alibi and it is difficult to determine how defendant's father could have provided an alibi defense when defendant telephoned his parole officer and admitted purchasing a juice in the gas station just before the shooting. Defendant has also failed to support his claim of prejudice with record evidence. Overall, there is no indication that defendant suffered any prejudice, either to his person or to his defense, as a result of the delay.

> After balancing the relevant factors, we agree with the trial court that defendant failed to demonstrate that his right to a speedy trial was violated.

*People v. Witherspoon*, 2014 WL 7214102, at *4–5 (internal citations omitted).

Most of the delays in this case were attributable docket scheduling issues, with petitioner consenting to some of the earlier delays.

Although government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government under *Barker,* more neutral reasons such as negligence or overcrowded dockets weigh against the state less heavily. *See Vermont v. Brillon,* 556 U.S. at 90; *Barker*, 407 U.S. at 531; *Maples*, 427 F.3d at 1026.

Petitioner's speedy trial claim fails because there is no evidence on the record that any part of this delay was intentionally caused by the trial court or the prosecution. *Norris v. v. Schotten*, 146 F.3d 315, 327-28 (6th Cir. 1998). There is nothing in the record to indicate a "willful attempt" by the prosecution to delay the trial, *Burns v. Lafler,* 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004)(quoting *Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), nor is there any evidence that the prosecution intentionally delayed the trial to gain a tactical advantage over petitioner. *Id.; see also Brown*, 498 F.3d at 531.

With regard to the third *Barker* factor, "[t]he defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. A criminal defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.*

In the present case, petitioner did not assert his right to a speedy trial until April 22, 2013, or a month before his trial began on May 28, 2013. Petitioner's delay in asserting his right to a speedy trial weighs against a finding that his right to a speedy trial was violated. *See U.S. v. Flowers,* 476 F. App'x 55, 63 (6th Cir. 2012).

Finally, petitioner is not entitled to habeas relief on his speedy trial claim, because he has not shown that his defense was prejudiced by this delay. *Burns*, 328 F. Supp. 2d at 722. Of the four factors to be assessed in determining whether a defendant's speedy trial rights have been violated, prejudice to the defendant is the most critical one. *See Trigg v. State of Tenn.*, 507 F.2d 949, 954 (6th Cir. 1975).

The relevant forms of prejudice in speedy trial cases are: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused,

and (3) the possibility that the defendant's defense will be impaired by dimming memories and loss of exculpatory evidence. *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. 514 at 532).

Petitioner is unable to establish any prejudice from the first form of prejudice because he was already incarcerated for his parole violation. *See U.S. v. Brown*, 498 F.3d at 532.  With respect to the second form of prejudice, petitioner is likewise unable to establish the second form of prejudice, because he has failed to allege that he suffered anything more than minimal anxiety from the delays. *See Norris,* 146 F.3d at 328.

Petitioner's main claim is that the delay in bringing him to trial prevented him from being able to present his father as an alibi witness. Petitioner alleges that the passage of time between his arrest and trial impacted the memory of his father, due to his advanced age, but offers no specific examples of memory loss on the part of the witness.  Vague assertions of faded memory are insufficient to show prejudice for establishing a speedy trial violation. *United States v. Edwards,* 577 F.2d 883, 889 (5th Cir. 1978); *see also Hakeem v. Beyer,* 990 F.2d 750, 763 (3rd Cir. 1993)(general allegations that witnesses' memories have faded during pretrial delay are insufficient to create the prejudice necessary to

prevail on a speedy trial claim, absent extreme delay or special circumstances). Furthermore, petitioner never filed a notice of alibi and it is difficult to ascertain how petitioner's father could have provided an alibi defense when petitioner telephoned his parole officer and admitted to purchasing a juice in the gas station just before the shooting. *People v. Witherspoon*, 2014 WL 7214102, at *5. Petitioner has failed to support his claim with any record evidence.

Moreover, in light of the overwhelming evidence of guilt in this case, petitioner is unable to establish that he was prejudiced by any delays. *U.S. v. Sylvester*, 330 F. App'x 545, 549 (6th Cir. 2009); *U.S. v. Van Dyke*, 605 F.2d 220, 227 (6th Cir. 1979). Petitioner is not entitled to habeas relief on his speedy trial claim.

### C. Claim # 3 The ineffective assistance of trial counsel claim.

Petitioner alleges the ineffective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the

defendant must overcome a strong presumption that counsel's behavior

lies within the wide range of reasonable professional assistance. *Id.*  In

other words, petitioner must overcome the presumption that, under the

circumstances, the challenged action might be sound trial strategy.

*Strickland,* 466 U.S. at 689.  Second, the defendant must show that such

performance prejudiced his defense. *Id.*  To demonstrate prejudice, the

defendant must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice

is a demanding one. 'The likelihood of a different result must be

substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379

(6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112).  The Supreme Court's

holding in *Strickland* places the burden on the defendant who raises a

claim of ineffective assistance of counsel, and not the state, to show a

reasonable probability that the result of the proceeding would have been

different, but for counsel's allegedly deficient performance. *See Wong v.*

*Belmontes*, 558 U.S. 15, 27 (2009).

 Petitioner contends that trial counsel was ineffective for failing to

object to evidence that petitioner was on parole at the time of the offenses.

The Michigan Court of Appeals rejected this claim as follows:

In this case, contrary to defendant's argument on appeal, the evidence of his parole status was relevant to establishing defendant's identity as a participant in the charged crime, which was an issue in the case. The prosecutor was required to prove defendant's identity as a perpetrator beyond a reasonable doubt. The testimony of defendant's parole officer was relevant to introduce defendant's admission to his presence at the gas station and to identify defendant as a participant in the crimes. Deloris Woods had served as defendant's parole officer since August 2011, and he reported to her twice monthly. After the offense, defendant telephoned Woods and admitted to being at the gas station near the time of the shooting. Defendant's parole status was necessary to explain why defendant felt it necessary to make admissions to Woods, and to explain how Woods knew defendant and could identify him on the video surveillance and still photographs as the person leaving the gas station in proximity to the time of the shooting. In short, the evidence was relevant and offered for a non-propensity purpose.

Regarding potential prejudice, there is no indication that the prosecutor sought to introduce Woods's relationship as defendant's parole officer to prejudice the defense. Notably, while the basic fact of defendant's parole status was placed before the jury, the nature of defendant's prior criminal record was not introduced and certain witnesses were admonished in advance of their testimony to avoid providing any unnecessary, inappropriate testimony regarding defendant's criminal history. The trial court further mitigated any potential prejudice by exploring this issue with the jury during voir dire and by instructing the jury before its deliberations that, when making their decision, they could not consider the fact that defendant was on parole at the time of the alleged offense. On this record, evidence of defendant's parole status was not barred by MRE 404(b)(1), and counsel cannot be considered ineffective for failing to offer a futile objection to the

evidence's admission.

Furthermore, it is apparent from the record that defense counsel was aware before trial that evidence of defendant's parole status would be admitted at trial and took steps to utilize evidence of defendant's parole status as a matter of trial strategy. For example, during trial, defendant's wife testified, in response to questioning from defense counsel, regarding defendant's release from the Department of Corrections, his meetings with his parole officer in Pontiac, and his parents providing transportation to the meetings because defendant did not have a license. Counsel used the evidence regarding defendant's compliance with his parole and his decision to immediately contact his parole officer after learning that he was a suspect in the offense to support the defense theory that defendant was innocent. Counsel argued that if defendant had any involvement in the shooting, he would have fled the jurisdiction and not contacted his parole officer. "[D]ecisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel."

In sum, the record discloses that defendant's parole status was admissible for limited, relevant purposes, and the prosecutor did not seek to introduce evidence of defendant's criminal history beyond those limited permissible purposes. It is also apparent that steps were taken to minimize any potential for unfair prejudice by ensuring that the nature of defendant's prior criminal record was not disclosed, by having the trial court explore this issue during jury voir dire to make sure that such evidence would not prevent a juror from being fair and impartial, and by ensuring that certain witnesses were admonished not to provide specific inappropriate testimony. Considering that evidence of defendant's parole status was already properly before the jury, it was not improper for defense counsel to reference that defendant had a criminal history in his examination of defendant's wife, or in using the evidence of defendant's parole status and his communications with his parole

officer to support the argument that defendant's activity at the gas station was innocent conduct. Under the circumstances, defendant has not overcome the presumption that defense counsel's failure to object and counsel's affirmative use of this evidence was sound strategy. Therefore, this claim of error is without merit.

*People v. Witherspoon*, 2014 WL 7214102, at *6–7 (internal citations omitted).

The Michigan Court of Appeals rejected petitioner's ineffective assistance of counsel claim, finding that petitioner's parole status was relevant and admissible. Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that petitioner's parole status was relevant and admissible, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F. App'x 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F. Supp.2d 704, 721 (E.D. Mich. 2003). In the present case, the Michigan Court of Appeals' determination that petitioner was not denied the effective assistance of trial counsel because of counsel's failure to object to the admission of this "bad acts" evidence was not contrary to, or an

unreasonable application of, clearly established federal law, and thus did not warrant federal habeas relief, in light of the Michigan Court of Appeals' finding that this "bad acts" evidence was admissible under Michigan law. *See Pearl v. Cason,* 219 F. Supp. 2d 820, 828-29 (E.D. Mich. 2002). Counsel is not ineffective for failing to object to admissible evidence. *See United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005).

A brief review of the complained of testimony establishes that such evidence was admissible under M.R.E. 404(b). Petitioner's parole status was admissible to prove his identity as the perpetrator. Secondly, trial counsel utilized petitioner's parole status as part of petitioner's defense during his trial. Petitioner is not entitled to relief on his third claim.

**D. Claim # 5. The sufficiency of evidence claim.**

Petitioner alleges that the great weight of the evidence introduced at trial was insufficient to establish beyond a reasonable doubt that petitioner was guilty of the crimes for which he was charged and convicted. Petitioner contends that he was merely present at the gas station and that no evidence shows that he planned or participated in the robbery or murder.

A federal habeas court cannot grant habeas relief because a state

conviction is against the great weight of the evidence. *Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *see also Nash v. Eberlin*, 258 F. App'x 761, 764, n. 4 (6th Cir. 2007)("a manifest-weight-of-the-evidence argument is a state-law argument")*; Artis v. Collins,* 14 F. App'x 387 (6th Cir. 2001)(declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence). The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at 648.  As long as there is sufficient evidence to convict petitioner, the fact that the verdict went against the great weight of the evidence does not entitle him to habeas relief. *Id.*  Petitioner is not entitled to relief on any claim that the verdict went against the great weight of the evidence.

Petitioner alleges that there was insufficient evidence to sustain his convictions under an aiding and abetting theory.

The Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In*

*Re Winship*, 397 U.S. 358, 364 (1970).  But the crucial question in reviewing the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after the evidence is viewed in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)(internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008)("A conviction may be sustained based on nothing more than circumstantial evidence.").  Moreover, "[c]ircumstantial

evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)(quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954)(circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more"); *Harrington,* 562 U.S. at 113 ("sufficient conventional circumstantial evidence" supported the verdict).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the

threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F.3d 780, 789 (6th Cir. 2003)(citing to *People v. Carines*, 460 Mich. 750, 759; 597 N.W.2d 130 (1999)).

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon. *See O'Guin v. Foltz,* 715 F.2d 397, 400 (6th Cir. 1983).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or some other person;
2. the defendant performed acts or gave encouragement that assisted the commission of the

crime; and

3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F.3d 315, 322 (6th Cir. 2007)(citing *Carines*, 460 Mich. at 757-58).

Under Michigan law, to convict a defendant of felony murder under an aiding and abetting theory, the prosecutor must show that someone killed the victim during the underlying predicate felony, that the defendant assisted that person in killing the victim, and that the defendant either intended to commit the crime or he knew when he gave the assistance that the other person intended to commit the crime. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003)(citing *People v. Smielewski*, 235 Mich. App. 196, 207; 596 N.W.2d 636 (1999)).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson,* 662 F.2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N.W.2d 728 (1995). The quantum or

amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission of the crime. *People v. Lawton,* 196 Mich. App. 341, 352; 492 N.W.2d 810 (1992).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *People v. Wilson*, 196 Mich. App. 604, 614; 493 N.W.2d 471 (1992). The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N.W.2d 359 (1995). An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Turner,* 213 Mich. App. at 568-69.

Mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. *People v. Norris*, 236 Mich. App. 411, 419-

20; 600 N.W.2d 658 (1999); *Fuller v. Anderson*, 662 F.2d at 424.

"[H]owever, a claim of mere presence is not a 'catch-all excuse' to defeat an inference of guilt beyond a reasonable doubt.  In evaluating a 'mere presence' defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability." *See Long v. Stovall*, 450 F. Supp. 746, 754 (E.D. Mich. 2006)(internal citation omitted).  An aider and abettor who is intentionally present during the commission of a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is recognizable to, and relied upon by, the principal.  Such acts may be silent and may not be overt but may still amount to more than 'mere' presence." *Sanford v. Yukins,* 288 F.3d 855, 862 (6th Cir. 2002). Michigan's "broad definition" of aiding and abetting "easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not 'merely' present, but providing emotional encouragement and support." *Id.*

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner aided and abetted in the robbery and murder and was not merely present at the time of the crimes.

The Michigan Court of Appeals found that there was sufficient evidence of record to support petitioner's conviction, under an aiding and abetting theory, as follows:

> In this case, the evidence showed that defendant entered the gas station without any attempt to disguise his appearance. He entered the station, dropped a glass bottle, and purchased a second glass bottle. When defendant exited the store, an arm appeared to place an obstruction in the door to prevent its closure. A person identified as codefendant Evans then entered the store. Cellular telephone data indicated a series of telephone calls between defendant's telephone and Evans's telephone before, during, and after the commission of the crime, including a call received by defendant's telephone at 2:53 a.m., which lasted for 12 minutes and 3 seconds, during which defendant was on video in the gas station for part of the time but did not appear to be speaking on the telephone. After the incident, contrary to clear evidence demonstrating that defendant knew Evans, defendant denied involvement in the crimes and indicated that he saw someone outside the store but that he did not know the person. See *People v. Unger*, 278 Mich.App 210, 227; 749 NW2d 272 (2008) ("A jury may infer consciousness of guilt from evidence of lying or deception.").

> Given the evidence presented in this case, reasonable inferences support the prosecutor's theory that defendant and Evans were working together, that the glass bottle was deliberately broken to lure the victim out of the protected area, that defendant used his cellular telephone as a microphone to allow Evans to hear what was transpiring in the gas station, and that the obstruction was

placed in the door as defendant exited in order to allow Evans to enter the gas station without the victim's knowledge to commit a robbery. Under an aiding and abetting theory, "a defendant is liable for the crime the defendant intends to aid and abet as well as the natural and probable consequences of that crime." *Robinson*, 475 Mich. at 14–15.[3]   In light of the facts and reasonable inferences arising from those facts, defendant participated in a ruse designed to lure the victim from the safety of the protected area in order to rob the victim, and defendant is liable for the natural and probable consequences of the planned robbery, including, in this case, the victim's death. The evidence does not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. Accordingly, there is no plain error.

*People v. Witherspoon*, 2014 WL 7214102, at *11.

The Michigan Court of Appeals reasonably found that the evidence presented at trial was sufficient to sustain petitioner's convictions for robbery and felony murder under an aiding and abetting theory.  Petitioner is not entitled to relief on his fifth claim.

### E.  Claim # 6.  The admission of additional photographs claim.

Petitioner next contends that his right to a fair trial was violated by the admission of autopsy photographs, which he claims were unfairly prejudicial.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502

---

[3] *People v. Robinson,* 475 Mich. 1, 715 N.W.2d 44 (2006).

U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the trial court admitted photographs of the murder victim fails to state a claim upon which habeas relief can be granted. *See e.g. Franklin v. Bradshaw,* 695 F.3d 439, 456-57 (6th Cir. 2012)(state court's determination, that petitioner's right to fair trial was not denied by admission of 18 gruesome autopsy photographs of his victims that were shown to jurors on large projector screen during trial for aggravated arson, aggravated robbery, and aggravated murder, was not contrary to clearly established federal law). In particular, the introduction of graphic or gruesome photographs of a murder victim does not entitle a petitioner to habeas relief where there is some legitimate evidentiary purpose for the photographs' admission. *See e.g., Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005)(upholding the admission of photographs depicting a victim's severed head, severed breast, and severed body parts

placed near the victim's torso; the photos were highly probative of the prosecutor's claim that the petitioner beat the victim severely and meticulously dissected her body); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003)(finding acceptable the admission of multiple photographs of the victim used by the coroner to illustrate the nature of the encounter preceding the victim's death); *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002)(observing that "although the photographs were gruesome, they were highly probative").

In regards to the autopsy photographs, petitioner did not object and those photographs were admitted into evidence as Exhibit # 41. *People v. Witherspoon*, No. 2014 WL 7214102, at *12. The Michigan Court of Appeals then found that the additional photographs depicting the victim's injuries were largely cumulative. The admission of mere cumulative evidence is not prejudicial. *Id.*

Petitioner also challenges the admission into evidence of two additional photographs which were found on codefendant Evans's cellular phone, of one of himself fanning money. The trial court overruled the objection at trial, concluding they were not more prejudicial than probative. ECF 16-15, PageID.1100.

The Michigan Court of Appeals upheld the trial court's ruling, finding:

The photographs of defendant on Evans's phone were relevant under MRE 401 to show defendant's association with Evans, the alleged shooter. Given the defense theory that defendant was merely present and was not involved in committing the crime with Evans, the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice under MRE 403. Defendant telephoned Woods, his parole officer, after he learned that video surveillance recorded the faces of the alleged perpetrator or perpetrators. Defendant volunteered to Woods that he was in the store, bought a juice, the juice broke, and he left. After he left, defendant reported that he saw someone outside the store, but he did not know the person. The photographs of defendant on Evans's telephone refuted defendant's claim that he did not know the person outside the store. Although defendant argues that it was not necessary to submit the photograph with defendant fanning money, that photograph was probative of the nature of defendant's relationship with Evans and the jury was advised that the photograph was taken months before the robbery, thereby precluding any potential for unfair prejudice if the jury were to equate the photograph with the armed robbery of the victim at the gas station. The trial court did not abuse its discretion by admitting the photograph at trial.

*People v. Witherspoon*, No. 2014 WL 7214102, at *12.

Petitioner's claim that this evidence should have been excluded under M.R.E. 403 for being more prejudicial than probative does not entitle petitioner to habeas relief. The Sixth Circuit observed that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how

prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012)(emphasis original).  Because the photographs served a proper evidentiary purpose, the trial court's decision to admit them did not render petitioner's trial fundamentally unfair or entitle him to habeas relief.  Petitioner's sixth claim is without merit.

## IV.  Conclusion

The Court will deny the petition for a writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without

reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner

leave to appeal *in forma pauperis,* because the appeal would be frivolous.
*Id.*

## V. ORDER

IT IS ORDERED that the Petition for a Writ of Habeas Corpus is

**DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is

**DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to

appeal *in forma pauperis.*

Dated:  June 11, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 11, 2019, by electronic and/or ordinary mail and also on
Norwood Witherspoon #484291, Lakeland Correctional
Facility, 141 First Street, Coldwater, MI 49036.

s/Barbara Radke
Deputy Clerk